UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| REGINA HARVEY,<br><br>         Plaintiff,<br><br>    v.<br><br>MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>         Defendant. | Case No. 24-cv-11741-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                           **December 6, 2024**

**I.     Introduction**

Plaintiff Regina Harvey ("Harvey") ("Plaintiff") has filed this lawsuit against Defendant Massachusetts Institute of Technology ("MIT") ("Defendant") alleging violations of Mass. Gen. L. c. 151B ("Chapter 151B") (Count I) and violations of the Family and Medical Leave Act ("FMLA") (Count II).  D. 1-1.  MIT has moved to dismiss both claims.  D. 8.  For the reasons stated below, the Court ALLOWS the motion in part and DENIES it in part.

**II.    Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must

1

perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face."  García-Catalán, 734 F.3d at 103 (citation omitted).

### III.     Factual Background

The Court draws the following factual allegations from the complaint, D. 1-1, and accepts them as true for the purpose of resolving the motion to dismiss.

Harvey is a black woman over the age of 60, D. 1-1 ¶ 6, who in 2020 was hired as a registered nurse by MIT, D. 1-1 ¶ 12.  There, she worked under the direct supervision of a white woman named Maureen Johnston ("Johnston").  Id. ¶¶ 14–15.  Harvey alleges Johnston subjected her to discrimination based upon her race.  Id. ¶ 16.

Specifically, Harvey alleges Johnston targeted and bullied her, including by subjecting her to micromanagement to which Johnston did not subject white employees.  Id. ¶ 18.  Likewise, while Johnston listened to and took suggestions from white employees, she allegedly did not do the same for Harvey.  Id. ¶ 19.  Johnston also allegedly used racial tropes when addressing Harvey and other black employees.  Id. ¶¶ 17, 21.  In addition, Johnston allegedly described black employees as "rough and tough" compared to white employees.  Id. ¶ 22.  Once, Johnston allegedly asked Harvey if her grandchild was "white" after seeing his picture.  Id. ¶ 23.  Harvey alleges this comment made her feel marginalized, demeaned and uncomfortable.  Id.

Harvey also alleges Johnston disparaged Harvey's supervision of other employees. For example, Johnston allegedly accused Harvey of advising employees to abuse the FMLA. Id. ¶ 28. On November 7, 2022, Harvey requested that Johnston upgrade the grade and job position descriptions of employees under Harvey's supervision, most of whom were women of color. Id. ¶ 29. In a meeting discussing this request, Harvey alleges Johnston accused her of being "combative." Id. ¶ 30. According to Harvey, this accusation could subject her to discipline. Id.

In addition, Harvey alleges Johnston denied her certain benefits and opportunities. See id. ¶¶ 24–25. For example, Johnston did not allow Harvey to attend an external conference and sent allegedly less qualified white employees instead. Id. ¶ 25. According to the complaint, Johnston did so despite knowing this would hurt Harvey by preventing her from reaching a performance goal set by her department. Id. Johnston also allegedly removed Harvey from a working group without disclosing why this action was taken. Id. ¶ 26.

On December 6, 2022, Harvey informed Johnston of her upcoming, approved FMLA leave, which was set to begin on December 12, 2022. Id. ¶ 31. Johnston allegedly reacted harshly and indicated she thought Harvey was feigning the basis for her leave. Id. ¶ 32. Harvey alleges Johnston retaliated against her for taking this leave by, on December 7, 2022, sending a negative email about Harvey and her job performance, which allegedly included numerous fabrications. Id. This email also allegedly included a long list of tasks for Harvey to complete during her leave. Id. Harvey alleges Johnston's actions prevented her from returning from FMLA leave to the position she held at MIT. Id. ¶ 33.

**IV.   Procedural History**

Harvey instituted this action in Middlesex Superior Court on March 15, 2024. D. 1-1. MIT removed this action to this Court on July 8, 2024. D. 1. Shortly thereafter, MIT moved to dismiss.

3

D. 8.  The Court heard the parties on the pending motion and took this matter under advisement. D. 16.

## V.  Discussion

### A.  Alleged Violation of Mass Gen. L. c. 151B (Count I)

Although Harvey appeared to assert claims of race and age discrimination in violation of Mass. Gen. L. c. 151B, D. 1-1 ¶¶ 35–47, her opposition clarifies that Count I only seeks relief as to alleged racial discrimination, D. 10 at 2 n.1.  Specifically, Harvey alleges "MIT created and maintained a hostile work environment targeted at [her] race."  D. 1-1 ¶ 44.

#### 1.  *Hostile Work Environment*

Under Chapter 151B, "[a] hostile work environment is one that is 'pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full participation of an individual in the workplace.'"  Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 532 (2001) (alteration in original) (quoting College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 162 (1987)); see Rosemond v. Stop & Shop Supermarket Co., 456 F. Supp. 2d 204, 212 (D. Mass. 2006) (stating that the basic framework for Title VII "applies to [C]hapter 151B hostile environment claims"); Tousst v. Brigham & Women's Hosp., 166 F. Supp. 3d 110, 115 (D. Mass. 2015) (stating that "[u]nder both Title VII and Chapter 151B . . . [plaintiff] must show that [she] was subject to 'offensive, race-based conduct that is severe or pervasive enough' that it altered the conditions of [her] employment" (quoting Landrau-Romero v. Banco Popular De P.R., 212 F.3d 607, 613 (1st Cir. 2000))).

Although "[t]here is no mathematically precise test to determine whether [Harvey] presented sufficient evidence that [s]he was subjected to a hostile work environment," the Court

4

must look at "all the circumstances, including the frequency and severity of the discriminatory conduct, whether it was physically threatening or humiliating, and whether it unreasonably interfered with [Harvey's] work performance." Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003) (internal citation and quotation marks omitted); see 15 LaGrange Street Corp. v. Mass. Comm'n Against Discrimination, 99 Mass. App. Ct. 563, 572 (2021).

Harvey has alleged Johnston "continually targeted and bullied" her, disparaged her, made false accusations about her job performance and used racial tropes when addressing Harvey and other black employees, including referring to black employees as "rough and tough" and referring to Harvey as "combative." See D. 1-1 ¶¶ 16–32. Taken together, and in light of mandate of Chapter 151B that its provisions "be construed liberally for the accomplishment of its purposes," Mass. Gen. L. c. 151B, § 9, these allegations are sufficient to "nudge [Harvey's] claim[] across the line from conceivable to plausible," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see, e.g., Semmami v. UG2 LLC, No. 18-cv-12396-DJC, 2019 WL 2249705, at *6 (D. Mass. May 24, 2019) (concluding that a supervisor's disparaging comments about an employee's national origin and religion were sufficient to support the plausibility of a hostile work environment claim); Cannell v. Corizon, LLC, No. 14–cv–405–NT, 2015 WL 8664209, at *6 (D. Me. Dec. 11, 2015) (denying motion to dismiss racially motivated hostile work environment claim where plaintiff alleged that offensive comments occurred regularly). Ultimately, determining whether Johnston's actions here created a hostile work environment based upon race requires additional development of the record, rendering dismissal inappropriate at this time. The Court, therefore, denies MIT's motion to dismiss with respect to this claim.

2.  *Disparate Treatment*

Absent direct evidence of discrimination, courts apply the burden-shifting framework applicable to Title VII claims to disparate treatment claims under Chapter 151B. Yee v. Mass. State Police, 481 Mass. 290, 294 (2019) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)); Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 40, n.11 (2005) (noting the Supreme Judicial Court's "practice to apply Federal case law construing the Federal antidiscrimination statutes" when interpreting Mass. Gen. L. c. 151B). Under the McDonnell Douglas framework, "(1) the plaintiff must be a member of a protected class; (2) she must be qualified for her job; (3) she must suffer an adverse employment action at the hands of her employer; and (4) there must be some evidence of a causal connection between her membership in a protected class and the adverse employment action." Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 70 (1st Cir. 2011).

MIT urges dismissal of any disparate treatment claim based upon race because Harvey has not plead an adverse employment action caused by her race. See D. 9 at 5–7. An adverse employment action must materially change the condition of the plaintiff's employment. Gu v. Bos. Police Dep't., 312 F.3d 6, 14 (1st Cir. 2002). Material changes must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002) (internal citation and quotation marks omitted). Harvey has plead that she was not permitted to attend an external conference and was removed from a working group. D. 1-1 ¶¶ 25–26.[1] These allegations, even as viewed in the light most favorable to Harvey, do not amount to a material change in the conditions of her employment. See de Jesus v. Potter,

---

[1] It does not appear that Harvey is pressing that Johnston's negative email on the heels of an FMLA request was an adverse action based upon her race. D. 10 at 2–4.

211 F. App'x 5, 9 (1st Cir. 2006) (concluding an "exclusion from one managerial decision is insufficient to constitute a material change in the terms and conditions of [] employment"). Therefore, to the extent Harvey pleads a disparate treatment claim based upon her race, that claim is dismissed.[2]

### B.   Alleged Violation of the FMLA (Count II)

The FMLA provides eligible employees with, among other things, the right to take twelve weeks of leave during any twelve-month period because the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017) (quoting 29 U.S.C. § 2612(a)(1)(D)). "Upon an employee's return, her employer must reinstate her to the same or an equivalent position, without any loss of accrued seniority." Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 718 (1st Cir. 2014); see 29 U.S.C. § 2614(a)(1). The "FMLA and its accompanying regulations make it unlawful for any employer to, among other things: (1) 'interfere with, restrain, or deny the exercise' of any FMLA right; or (2) retaliate or 'discriminat[e] against employees . . . who have used FMLA leave.'" Carrero-Ojeda, 755 F.3d at 718 (alterations in original) (citations omitted). Harvey claims that MIT retaliated against her for exercising her FMLA rights and she appears to claim that MIT interfered with her exercise of her FMLA rights. D. 1-1 ¶¶ 48–52.

#### 1.   Interference with FMLA Rights

To establish a prima facie case for FMLA interference, a plaintiff must establish that, "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA;

---

[2] In her opposition, Harvey does not challenge dismissal of a race-based disparate treatment claim, see D. 10 at 2-4, but instead defends her hostile work environment claim based upon race, id., which as explained above survives the motion to dismiss.

7

(3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." Carrero-Ojeda, 755 F.3d at 722 n.8.  A plaintiff must also demonstrate that the denial of FMLA benefits resulted in prejudice.  Romeo v. Town of Winthrop, No. 22-cv-10573-DJC, 2023 WL 3605462, at *6 (D. Mass. May 23, 2023) (citing cases).

Harvey argues that MIT interfered with her FMLA benefits by denying her the right to take leave without fear of retribution, mistreatment and relation.  D. 10 at 4–5.  But "it is not enough, for a showing of prejudice, to allege fear of not being able to leave or come back to work." Favreau v. Liberty Mut., Inc., 451 F. Supp. 3d 150, 169 (D. Mass. 2020); see Szabo v. Trs. of Bos. Univ., No. CIV. A. 96-10806-GAO, 1998 WL 151272, at *6 (D. Mass. Mar. 18, 1998) (concluding that even if the plaintiff "can show that she suffered some emotional distress and worry at the uncertainty of not knowing what her job status would be," that "[l]oss of a sense of job security or the accompanying mental distress" is not an injury covered under the FMLA (citation omitted)), aff'd, 181 F.3d 80 (1st Cir. 1998).

To the extent Harvey alleges MIT interfered with her FMLA benefits by preventing her "from returning from FMLA to the position she held at MIT," D. 1-1 ¶ 33, see D. 10 at 4–5, these allegations are conclusory and cannot survive a motion to dismiss.  García-Catalán, 734 F.3d at 103.  Although Harvey intimates that the negative email Johnston sent on December 7, 2022 after learning about Harvey's upcoming approved FMLA leave resulted in Harvey's "constructive discharge," she does not provide any facts that explain how the email lead to this result.  D. 1-1 ¶¶ 31–34.  Even if she did, Harvey's interference claim cannot survive because at its core, her claim is one of retaliation.  See Mellen v. Trs. of Bos. Univ., 504 F.3d 21, 26–27 (1st Cir. 2007) (observing that "whatever label a claim is given, what matters is 'whether the plaintiff is, at bottom,

8

claiming that the employer denied his or her substantive rights under the FMLA or that the employer retaliated against him or her for having exercised or attempted to exercise those rights'" (quoting Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 332 (1st Cir. 2005))); Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 282 (6th Cir. 2012) (concluding that where "the essence of [plaintiff's] claim is retaliation, not interference," the claim should be analyzed as a retaliation claim). Here, even as alleged, Harvey was not denied the FMLA leave, but instead alleges that as a result of same, Johnston took adverse action against her. Accordingly, to the extent Harvey alleges FMLA interference, this portion of Count I is dismissed.

### 2. *Retaliation*

To state an FMLA retaliation claim, Harvey must plausibly plead that "(1) she availed herself of a protected FMLA right; (2) she was 'adversely affected by an employment decision;' and (3) 'there was a causal connection between [her] protected conduct and the adverse employment action.'" Germanowski, 854 F.3d at 73 (alteration in original) (quoting Carrero-Ojeda, 755 F.3d at 719). Harvey may establish the causal connection "directly or by inference." Colburn, 429 F.3d at 332. "'[V]ery close temporal proximity' . . . may be sufficient to 'meet the relatively light burden of establishing a prima facie case of retaliation.'" Stratton v. Bentley Univ., 113 F.4th 25, 49 (1st Cir. 2024) (quoting Sánchez–Rodríguez v. AT & T Mobility P.R., Inc., 673 F.3d 1, 15 (1st Cir. 2012) and DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008)). But temporal proximity alone is insufficient where the "larger picture undercuts any claim of causation." Carrero-Ojeda, 755 F.3d at 720 (quoting Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003)). Although, for the purposes of an FMLA retaliation claim, an adverse effect "need not alter the terms and conditions of employment, it must be 'more disruptive than a mere inconvenience

9

or alteration of job responsibilities.'" Haglund v. Estee Lauder Companies, Inc., 466 F. Supp. 3d 292, 297 (D. Mass. 2020) (quoting Marrero, 304 F.3d at 23).

MIT argues Harvey has not plead facts reflecting an adverse effect on Harvey, "nor any causal connection between the exercise of her protected FMLA rights and any such purported adverse action." D. 9 at 11. Harvey's allegations are sparse, but the bar for "alleging an adverse employment action for purposes of an FMLA retaliation claim" is "low." Haglund, 466 F. Supp. 3d at 297. According to the complaint, the day after Johnston was informed of Harvey's planned leave, she sent Harvey a negative email concerning her job performance and included "a long list of tasks" for Harvey to complete during her planned FMLA leave. D. 1-1 ¶ 32. At the motion to dismiss stage, this e-mail which allegedly created a false record of poor job performance, is plausibly "more disruptive than a mere inconvenience or alteration of job responsibilities," Haglund, 466 F. Supp. 3d at 297, and its temporal proximity to Harvey's FMLA request plausibly alleges causation, see Germanowski, 854 F.3d at 74. The Court, therefore, denies MIT's motion to dismiss with respect to the FMLA retaliation claim.

## VI.    Conclusion

Accordingly, Count I survives only to the extent that it alleges a hostile work environment claim based upon race and Count II survives only to the extent that it alleges an FMLA retaliation claim, D. 8.

**So Ordered.**

s/ Denise J. Casper<br>
United States District Judge